*NATIONAL BED CO. v. CHARLES M. BATES.

**Uncertainty of Goods to be Sold, Defect in Contract for Sale of Goods Precluding Recovery of Commissions.**

An agreement to purchase during a designated period a stipulated amount in money's worth of certain kinds of goods, the exact goods to be agreed upon within the period specified, does not amount to a contract in which the legal relations between the parties are determined and recovery for commissions maintainable until the agreement is reached as to the exact goods to be purchased.

ERROR.

*Charles McCamic* and *F. H. Williams,* for plaintiff in error.

*Charles B. Wilby* and *Mitchell Wilby,* for defendant in error.

**SWING, J.**

This cause is in this court on error to the judgment of the superior court. In that court Bates brought an action to recover commissions on a contract for the sale of goods made by the bed company. Bates sold the goods of the bed company in Cincinnati and Kentucky.

Bates alleged in his petition that the bed company agreed to fill all orders for its goods procured by him and accepted or approved by the bed company. He further alleged that he procured certain contracts which were accepted and approved by the bed company, but that the bed company violated its contract with him, that it discontinued making the goods and that it refused and still refuses to ship and deliver the good sold by him.

Bates sets out in his petition the several sales made by him under his contract with the bed company. He alleged "that ac-

---

cording to the terms of his agreement with the defendant he was to receive on the invoice price of all good that were shipped, less the freight, a commission of five per cent. except where a reduction was made in the price and in the commission by special agreement.''

Bates sets out in his petition thirteen sales or contracts of sale which he had procured for the bed company. At the end of each he alleges, ''wherefore there is due to the plaintiff by the defendant as his commission on said order the sum of $.......'' He alleges that no part thereof has been paid, and prays for judgment for the total sum alleged to be due.

The bed company answered alleging that by the terms of the contract between it and Bates, Bates was to be paid commissions on goods that were actually shipped, and that on all goods actually shipped Bates had been paid his commissions. It further denied that it made contracts as severally alleged to have been made in the petition.

It is practically agreed that the contract made between the parties was that Bates was to be paid his commission ''on goods actually shipped,'' and that he had been paid his commissions on all goods that have been actually shipped. The present action is one for commissions and not for damages for a breach of contract.

It would, on principle, necessarily seem to follow that Bates can not recover in this action. He has been paid all the commissions he has earned under his contract. If the bed company had violated its contract, Bates in a proper action and under proper allegations and proper proof would be entitled to recover whatever damages he proved he had sustained, and certainly what he would receive as commissions would be very strong evidence to prove the amount of the damage, but by the very terms of his contract he can only recover commissions on goods that are actually shipped, and as he sues for commissions and not damages he can only recover for commissions.

Are the contracts alleged to have been procured enforcible contracts? The following is the contract of the Queen City Tin Ware Company:

National Bed Co. v. Bates.

"Gentlemen—Kindly enter our contract for $20,000. Gray two coat white lined first quality like samples submitted, we to have control of this ware in our city, Newport and Covington private label, specifications to follow. Contract expires November 5, 1907. Discount, 80, 7½ per cent. freight allowed to our city. Dated November 5, 1906. Queen City Tin Ware Co., O. D."

As a part of this contract the following is added: "Goods to be taken out as wanted." All the other contracts are of similar import. In considering this question the surrounding circumstances should be taken into consideration in order to understand the intention of the parties.

The bed company was a manufacturer of enameled ware, such as coffee pots, pans, etc., making over five hundred different shapes and patterns. The parties with whom the alleged contracts were made were wholesale and retail dealers, selling their wares every day. The questions involved as to the nature of this contract were fully and ably argued by learned counsel on either side, orally, and this has been supplemented by able and elaborate briefs in which the authorities are cited at length. We may say that the authorities have not been uniform, but it will not be our purpose to distinguish them or in fact to cite any of them, but after a careful consideration of them to state our conclusions.

Judge William Markby, in his concise and profound work, "Elements of the Law," gives this definition of a contract:

"A contract is the concurrence of several persons in a declaration of intention, whereby their legal relations are determined."

It may be said that it is of the highest importance to the business interests of our country, that when parties enter into a contract, the contract should be enforced where the intent of the parties can be ascertained, but tested by the definition given by Judge Markby, what is the declared intention of the parties whereby their legal relation is determined? These contracts were to run one year. It was an agreement to take so many dollars worth of ware within this time, as wanted, and as specified. The specifications might include over five hundred. The party agreeing to purchase might want the articles at any time

within the year.  The bed company was a manufacturer of these articles, and of course it could not know what particular kind of goods the purchaser would want or when he would want them. The articles were not in existence at the time the agreements were made.

This agreement must be read in the light of the business that each was engaged in.  The dealers were engaged in selling their goods daily and the manufacturer made the goods for daily consumption, and yet by the terms of the agreement the purchasers were not bound to take any goods until the last day of the year, and until that time he was not bound to specify what kind of goods he would take and the manufacturer could not know what particular kind of goods should be made so as to fill the order when it came, if it should come on the last day of the contract.

It follows, therefore, that the particular goods to be purchased were not known to the parties at the time the agreement was made, and were not a part of the agreement, and as to this the concurrent declarations of the intentions of the parties had not been made; but it is clear that it was not the intention of the parties that the agreement contemplated that the provision in the agreement that the goods could be ordered as wanted and as specified, up until the last day of the year, and yet such is the exact reading of the agreement. It would seem manifestly unjust and contrary to the intentions of the parties that the purchaser could on the last day of the year send in an order for particular goods, and if the order were not filled, recover damages for a breach of the contract.  That this was not the intention of the parties seems clear from the way the business was carried on and the correspondence between Bates and the bed company.

As we read this contract it amounts to this, that it was an agreement to purchase during a certain period a certain amount in money's worth, of certain kinds of goods, the exact goods to be agreed upon within that time, and that until the agreement was reached as to the exact goods to be purchased there was no con-

State, ex rel. v. Union Gas & Elec. Co.

tract in which the legal relations between the parties was determined.

Judgment reversed.

Smith, J., concurs.

Giffen, J., dissents.